**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

**PAMELA HARSCH** *
898 RIDGE ROAD
AMBRIDGE, PENNSYLVANIA 15003 *
[Beaver County]
*
and
*
**DAVID HARSCH**
898 RIDGE ROAD *
AMBRIDGE, PENNSYLVANIA 15003
[Beaver County] *

**Plaintiffs,** *

**vs.** * **Case No.: ____________________**

**JMR TRUCKING, INC.** *
8407 MEADOW GREEN WAY
GAITHERSBURG, MARYLAND 20877 *
[Montgomery County]
*
SERVE ON RESIDENT AGENT:
*
JORGE M. RUIZ RAMIREZ
8407 MEADOW GREEN WAY *
GAITHERSBURG, MARYLAND 20877
*
and
*
**JORGE M. RUIZ RAMIREZ**
18635 CROSS COUNTRY LANE *
GAITHERSBURG, MARYLAND 20879
[Montgomery County] *

**Defendants.** *

* * * * * * * * * * * * *

**COMPLAINT AND JURY DEMAND**

Plaintiffs, Pamela Harsch and David Harsch (collectively, "Plaintiffs"), by and through their attorneys, hereby file this Complaint against JMR Trucking, Inc. and Jorge M. Ruiz Ramirez (collectively, "Defendants"), and for their causes of action, state in support as follows:

**PARTIES**

1. Plaintiff Pamela Harsch resides in Ambridge, Pennsylvania.

2. Plaintiff David Harsch is the husband of Plaintiff Pamela Harsch, and resides in Ambridge, Pennsylvania.

3. At all relevant times, Plaintiffs Pamela Harsch and David Harsch were and are husband and wife.

4. Defendant JMR Trucking, Inc. is a corporation organized under the laws of Maryland with its principal place of business at 8407 Meadow Green Way, Gaithersburg, Maryland 20877.

5. Defendant Jorge M. Ruiz Ramirez (hereinafter "Defendant Ramirez") resides at 18635 Cross Country Lane, Gaithersburg, Maryland 20879.

**JURISDICTION AND VENUE**

6. This court has personal jurisdiction over Defendant JMR Trucking, Inc. pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

7. This court has personal jurisdiction over Defendant Ramirez pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different states.

8. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because both Defendants reside in the State of Maryland and the events giving rise to this claim occurred in Maryland.

9. Venue is proper in the United States District Court for the District of Maryland Northern Division pursuant to 28 U.S.C. § 100.

**FACTS COMMON TO ALL COUNTS**

10. On August 9, 2016, Mrs. Harsch was a rear-seated passenger in a taxi cab.

11. At approximately 7:50 a.m., the taxi cab was traveling southbound in the far right lane of I-95 in Columbia, Howard County, Maryland.

12. Defendant Ramirez was also traveling southbound on I-95 in Columbia, Maryland.

13. The vehicle driven by Defendant Ramirez is owned by Defendant JMR Trucking, Inc.

14. Defendant Ramirez was driving behind the taxi cab in which Mrs. Harsch was a passenger.

15. Defendant Ramirez's vehicle slammed into the back of the taxi cab.

16. The impact from this collision pushed the taxi cab into the vehicle in front of it.

17. The taxi cab then went off the road and into a ditch.

18. Emergency services arrived and transported Mrs. Harsch to Howard County General Hospital by ambulance.

19. Mrs. Harsch was discharged from the hospital and told to follow up with her primary care physician.

20. After returning home, she developed extensive bruising on her abdomen, chest, hips, legs, and arms.

21. She experienced headaches, uncharacteristic tearful episodes, and was unable to sleep.

22. Days later, Mrs. Harsch went to her primary care physician.

23. She tried to return to work the following week, but experienced nausea, dizziness, and difficulty with focus and comprehension.

24. She saw her primary care physician again on August 16th and was diagnosed with a head injury.

25. Mrs. Harsch was referred to physical therapy, which started on August 19, 2016.

26. She completed eight weeks of physical therapy.

27. She also was referred to Dr. Thomas Scott with Allegheny Neurological Associates.

28. Dr. Scott evaluated Mrs. Harsch on August 24, 2016.

29. Dr. Scott diagnosed Mrs. Harsch with a severe concussion and post-concussive syndrome with some residual ataxia.

30. Mrs. Harsch continued to experience fatigue, difficulty focusing, dizziness, and vision problems.

31. Mrs. Harsch also began treating with Dr. Piper Kilpatrick at ASP Orthopedics and Sports Medicine.

32. Dr. Kilpatrick affirmed the concussion and post-concussive syndrome diagnoses.

33. To treat balance and related issues, Mrs. Harsch began vestibular therapy in November 2016 at Straka & McQuone, Inc.

34. The healthcare providers there diagnosed her with gait abnormality, vertigo-disequilibrium, cervical spine pain, headaches, and hip pain.

35. Mrs. Harsch continued with vision therapy, vestibular therapy, and continued to see Dr. Kilpatrick and Dr. Scott to monitor her condition.

36. In February 2017, Mrs. Harsch was referred to Dr. James Huha, a clinical psychologist who specializes in neuropsychology.

37. Dr. Huha diagnosed her with post-traumatic stress disorder and confirmed her brain injury.

38. Dr. Huha found Mrs. Harsch's condition to be consistent with a traumatic brain injury and the cause of her cognitive and emotional issues.

39. Mrs. Harsch was referred for cognitive testing with Dr. Michael Franzen at Allegheny Neurological Associates in March 2017.

40. Mrs. Harsch began cognitive rehabilitation at Health South Sewickley in May 2017.

41. She was given a primary diagnosis of concussion and noted to have moderate to severe cognitive deficits.

42. In February 2018, Mrs. Harsch underwent an independent medical examination with Dr. James Petrick at the request of her workers' compensation carrier.

43. Dr. Petrick agreed with the post-concussion syndrome diagnosis.

44. Dr. Petrick found that Mrs. Harsch's processing speed, verbal fluency, memory, cognitive speed and efficiency, and mental flexibility were all impaired.

45. Dr. Petrick stated that Mrs. Harsch's ongoing symptoms and ailments are all causally related to the collision at issue.

46. Mrs. Harsch still continues to experience headaches and migraines.

47. She is easily overwhelmed and fatigued.

48. She often forgets how to complete simple tasks because of her brain injury.

49. She forgets routine, daily tasks and things previously committed to memory like recipes and the basics of cooking.

50. She still has a vertical shift in her eye which causes issues with her vision, such as seeing double.

51. Mrs. Harsch will require prisms in her prescription eyeglass lenses in order to combat her vision problems.

52. She has difficulty driving.

53. Mrs. Harsch's continued treatment with Dr. Huha was recently reviewed and approved again; she continues treating her cognitive disabilities.

54. She will be prescribed medication to attempt to avoid migraines for the rest of her life.

55. Defendants' negligence has changed Mrs. Harsch's life significantly in all areas.

56. Right from the outset, her professional life was taken off course.

57. Mrs. Harsch was scheduled to speak at the PARM Fall Symposium in October 2016, a premier conference related to her profession.

58. Her injuries caused her to miss out on this opportunity, which was very important to her personally and professionally.

59. Her employer had to provide several accommodations to support her disability because she had difficulty concentrating, traveling, and working for extended periods of time.

60. Mrs. Harsch was demoted from her position as Vice President to Senior Director in March 2017 after serving in that position for a decade.

61. She was recently fired from her job.

62. She has suffered a significant, six figure, annual wage loss as a result.

63. In addition to her physical pain and suffering, Mrs. Harsch's marriage and relationships have been adversely affected.

64. While she continues trying to make the best of her circumstances, her enjoyment of life has suffered tremendously.

65. She has missed many of life's important moments.

66. Due to her injuries, Mrs. Harsch has missed events such as her school reunion, family vacations, and a friend's wedding in Italy.

67. She has needed to retreat during many events including her daughter's wedding and her father's funeral because of her condition.

68. Mrs. Harsch must wear earplugs and sunglasses in an effort to prevent stimuli from overwhelming her.

69. She often requires several hours of sleep to recover after being in a stimulating environment.

70. Mrs. Harsch was an independent, active, and professional woman before the collision.

71. Since the collision, her injuries have required her to take frequent breaks, work shorter days, and need the aid of an assistant.

72. Mrs. Harsch's injuries have interfered with her ability to travel as freely as she could before.

73. Mrs. Harsch's lingering injuries have resulted in an inability to perform in her career in the manner that she once could.

74. At least a dozen people including her relatives, friends, members of her church, former employees, supervisors, attorneys, and doctors can attest to the dramatic changes this has had on her life.

75. As a direct and proximate result of Defendants' negligence, Mrs. Harsch has suffered severe and lasting injuries as described herein.

76. Mrs. Harsch has struggled through years of therapy and rehabilitation.

77. She continues treating her injuries.

78. Consequently, Mrs. Harsch has incurred tens of thousands of dollars in past medical expenses.

79. It is more likely than not that Mrs. Harsch will incur future medical expenses as a result of this condition, including continued therapy and medication.

80. Mrs. Harsch's employment has been adversely affected by this collision, including resulting in a loss of economic earnings extending into the seven figures range.

81. Emotionally, psychologically, and interpersonally, Mrs. Harsch will never return to her pre-collision condition.

82. Her 37-year marriage to Plaintiff David Harsch has suffered as well because all aspects of their lives have been diminished.

83. The couple has have lost significant quality time together and had several once-in-a-life time occasions tarnished as a direct result of the negligence at issue in this case.

84. A promising future together is now bleak due to Defendants' negligence.

85. The foregoing was a natural, proximate cause of Defendant Ramirez's driving into the back of the vehicle in which Mrs. Harsch was riding by virtue of rattling her brain inside her skull and causing permanent neurological and emotional injuries.

86. For these reasons, Mrs. Harsch presents the following causes of action in support of her substantial claim for reimbursement of the significant economic and non-economic losses she has suffered.

**COUNT I**
**NEGLIGENCE**

87. Plaintiffs adopt and re-allege all paragraphs set forth within this Complaint as if set forth in their entirety here.

88. This is an action sounding in negligence and negligence per se.

89. Defendants had a duty to assure the truck Mr. Ramirez was driving was in proper working condition, including having functional and adequate brakes.

90. Defendant Ramirez had a duty to operate his vehicle in a safe and reasonable manner so that other drivers on the shared highway would not be exposed to injury.

91. At the time of the collision, Defendants breached their duty and were negligent in the following particulars, among others:

a. Following too closely;

b. Driving too fast for the conditions;

c. Failure to give full time and attention;

d. Failure to operate a vehicle in accordance with the laws and motor vehicle regulations of the State of Maryland, including but not limited to:

i. Md. Code Ann., Transp. § 21-801(a) (operating vehicle at a speed that is more than that which is reasonable and prudent under the conditions);

ii. Md. Code Ann., Transp. § 21-801(b) (failing to control the speed of a vehicle to avoid a collision with regard to the actual and potential dangers existing, is more than that which is reasonable and prudent under the conditions)

iii. Md. Code Ann., Transp. § 21-801(h) (failing to drive at an appropriate, reduced speed given the existence of special dangers including roadway conditions and the ravine to the side of the roadway)

iv. Md. Code Ann., Transp. § 901.1(b) (negligently driving a vehicle in a careless or imprudent manner that endangered property and the life of Mrs. Harsch and others on the roadway);

v. Md. Code Ann., Transp. § 21-310(a) (following more closely than was reasonable and prudent and failing to have due regard for the speed of the other vehicles and the traffic on and the condition of the highway;

vi. Md. Code Ann., Transp. § 21-310(b) (truck driver failed to leave enough space so that an overtaking vehicle could enter and occupy the space without danger because there was insufficient space between defendants' vehicle and the vehicle in which Mrs. Harsch was a passenger);

e. Failure to operate a commercial motor vehicle in a commercial motor vehicle in accordance with the regulations set forth in the Federal Motor Carrier Safety Administration Regulations, including but not limited to:

i. 49 C.F.R. 392.2 (operating the vehicle in violation of the laws, ordinances, and regulations of the State of Maryland, which is the jurisdiction in which it was operated);

f. Failure to otherwise comply with the obligations of due and reasonable care.

92. As a direct and proximate cause of these negligent acts, Defendant Ramirez collided with the vehicle in which Mrs. Harsch was an innocent passenger, causing the injuries stated with particularity above.

93. Had Defendants exercised reasonable care, Mrs. Harsch would not have been injured.

94. As a direct and proximate result of these injuries, Plaintiffs suffered those injuries and damages described herein.

**COUNT II**
**RESPONDEAT SUPERIOR[1]**

95. Plaintiffs adopt and re-allege all paragraphs set forth within this Complaint as if set forth in their entirety here.

96. Defendant Ramirez was driving Defendant JMR Trucking, Inc's vehicle at the time of the collision.

[1] Nothing in this Complaint should be construed as an admission to both Defendants being deemed joint tortfeasors under the Maryland Uniform Contribution among Joint Tortfeasors Act.

97. Defendant enjoyed the benefits of using the vehicle other than personally holding title to it.

98. Defendant Ramirez owed a duty to Mrs. Harsch, breached that duty by negligently colliding with the vehicle in which she was a passenger, and directly caused the collision that injured Mrs. Harsch.

99. Defendant JMR Trucking, Inc. owed a duty of reasonable care to those who came into contact with driver, including Mrs. Harsch.

100. Defendant JMR Trucking, Inc. owed a duty to undertake a reasonable inquiry and oversight of its selection, hiring, retention, and oversight of drivers of its vehicles.

101. Defendant JMR Trucking, Inc. owed a duty to exercise reasonable care to select employees, train, and oversee employees competent and fit for the work assigned to them

102. Defendant JMR Trucking, Inc. had a duty to refrain from retaining the services of an unfit employee regardless of whether one engages an agent or independent contractor.

103. Defendant Ramirez is an agent and/or employee of Defendant JMR Trucking, Inc.

104. At the time of the collision, Defendant Ramirez was working in the ordinary course of business.

105. He was working within the scope of his employment.

106. He was working in furtherance of Defendant JMR Trucking, Inc.'s business.

107. Defendant JMR Trucking, Inc. permitted, authorized, and ratified the conduct of its employee or agent, Defendant Ramirez.

108. Consequently, Defendant JMR Trucking, Inc. is vicariously liable for the acts and omissions of Defendant Ramirez.

**COUNT III**
**LOSS OF CONSORTIUM**

109. Plaintiffs adopt and re-allege all paragraphs set forth within this Complaint as if set forth in their entirety here.

110. Plaintiffs were husband and wife for nearly four decades at the time of the collision.

111. Plaintiffs continue to be husband and wife.

112. Defendants' negligent conduct injured Plaintiffs' marital relationship, including but not limited to a loss of society, affection, assistance, comfort, protection, care, advice, counsel, and companionship, individually and within their marriage as described herein.

113. Plaintiffs have lost enjoyment of life, missed important life events, and frequently have their lives disrupted by the consequences of Defendants' negligence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

114. Enter judgment in favor of Plaintiffs and against Defendants in an amount exceeding $75,000 resulting from the physical pain and suffering, mental anguish, emotional suffering, medical expenses, future medical costs, future lost earnings and loss of consortium all flowing as a natural consequence of Defendants' wrongful acts;

115. Enter judgment in favor of Plaintiffs and against Defendants in an amount based on any other damages to be proven at trial, and for pre and post-judgment interest, and;

116. Grant such further relief as the Court, justice, or equity may require or deem proper under the circumstances.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: 1/24/2019

Respectfully submitted,

Justin A. Browne, Esq. (Bar No. 29164)
Ketterer, Browne & Anderson, LLC
336 S. Main Street
Bel Air, Maryland 21014
Phone: (410) 420-0184
Facsimile: (855) 334-5626
Justin@KBAattorneys.com

*ATTORNEYS FOR PLAINTIFFS*